IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAY TENORIO,

    Plaintiff,

v.                                                                            CV 17-1092 JHR

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Ray Tenorio's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, [Doc. 15], filed April 6, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 4, 7, 8]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"), [1] the Court grants Mr. Tenorio's Motion for the reasons set forth below.

### I) INTRODUCTION

This Court's institutional role is to ensure that the Commissioner's decision to deny Social Security benefits is supported by the law and substantial evidence. In this case, the Commissioner failed to meet both standards when she effectively rejected the uncontroverted medical diagnoses and opinions of consultative examiner Paula Hughson, M.D. As such, the Court has no choice but to remand Mr. Tenorio's case for additional proceedings.

---

[1] Documents 12 and 12-1 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

## II) BACKGROUND

Mr. Tenorio filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on August 7, 2013. *AR* at 187-188. He alleged a disability onset date of November 2, 2002, due to "PTSD, Anxiety, Depression, Seizures, Right Ear Deafness, Right Eye Blindness, No Left Kidney, [and] Memory Loss – Both Short and Long term." *AR* at 93-94. The Administration denied Mr. Tenorio's claim initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 92-137.

ALJ Raul Pardo held an evidentiary hearing on September 23, 2016. *AR* at 48-91. On December 28, 2016, the ALJ issued an unfavorable decision, finding that Mr. Tenorio has not been under a disability from his alleged onset date through the date of his decision. *AR* at 26-47. In response, Mr. Tenorio filed a "Request for Review of Hearing Decision/Order" on February 9, 2017. *AR* at 185-186. After reviewing his case, the Appeals Council denied Mr. Tenorio's request for review on November 6, 2017. *AR* at 1-2. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §

416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Tenorio has not engaged in substantial gainful activity since his application date. *AR* at 31. At Step Two, he determined that Mr. Tenorio has the severe impairments of "vision disturbance in right eye; right ear hearing loss; anxiety; depression, seizures, [and] alcohol abuse in recent remission[.]" *AR* at 31. At Step Three, the ALJ concluded that Mr. Tenorio's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 33-36. Mr. Tenorio does not challenge these findings on appeal. [*See* Doc. 15].

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Tenorio retains the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except he is able to handle frequently bilaterally; climb ramps and stairs occasionally and never ladders, ropes or scaffolds; and stoop occasionally. He is limited to avoid ordinary hazards in the workplace (e.g., boxes on floor, doors ajar, etc.) due to vision issues; and to avoid unprotected heights and moving mechanical parts occasionally due to seizures. He is limited to moderate noise due to right ear deafness. The claimant is limited to simple, routine tasks; respond appropriately to public occasionally. Time off task can be accommodated with normal breaks.

*AR* at 36-37.

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Mr. Tenorio is unable to perform his past relevant work as a courtesy clerk and a janitor. *AR* at 42. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Tenorio can perform despite his limitations. *AR* at 42-43. Specifically, the ALJ determined that Mr. Tenorio retains the functional capacity to work as a cleaner housekeeper or office helper, despite his impairments. *AR* at 43. Accordingly, the ALJ determined that Mr. Tenorio is not disabled as defined in the Social Security Act, and denied benefits. *AR* at 43.

### III) LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show us that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, --- F. App'x, ----, 2018 WL 6133387, at *2 (10th Cir. Nov. 23, 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

### IV) ANALYSIS

In addition to the issue of whether the ALJ properly rejected Dr. Hughson's uncontroverted diagnoses and opinions, Mr. Tenorio raises concerns as to the ALJ's weighing of the Agency's non-examining Psychologist, Donald Gucker, Ph.D., and the ALJ's subsequent Step Five conclusions. [*See generally* Doc. 17]. Because the Court agrees that the ALJ erred when weighing Dr. Hughson's diagnoses and opinions, it will not address Mr. Tenorio's other claims of error

"because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

The Administration referred Mr. Tenorio to Paula Hughson, M.D., with instructions to complete a mental status consultative examination. *See AR* at 341. These instructions specifically asked Dr. Hughson to inquire as to the history of Mr. Tenorio's illness and response to treatment; to comment on changes in sleep, appetite, weight, energy, interest levels, etc.; to "provide a standard psychosocial history[;]" to assess for drug and alcohol abuse; to provide a complete mental status exam; to give her diagnostic impressions based on the DSM IV; to comment on Mr. Tenorio's competency to handle his own benefit payments; and to "describe [Mr. Tenorio's] ability to understand and remember basic instructions, concentrate and persist at tasks of basic work, interact with the general public and/or co-workers and adapt to changes in the workplace." *AR* at 341-342. Pursuant to these instructions, Dr. Hughson conducted a consultative psychiatric examination of Mr. Tenorio on January 22, 2014. *AR* at 345. The examination lasted 60 minutes. *AR* at 345. Dr. Hughson recorded Mr. Tenorio's appearance, chief complaints, medical history and alleged psychiatric problems. *AR* at 345-348. She also performed a mental status examination and reviewed some of Mr. Tenorio's medical records. *AR* at 345, 348. Ultimately, Dr. Hughson rendered the following diagnoses:

> AXIS I: 1. Cognitive Disorder NOS Secondary to TBI
> 2. Mood Disorder NOS Secondary to TBI
> 3. History of Alcohol Abuse, Episodic
> AXIS II: Possibly Borderline Intellectual Functioning
> …
> AXIS V: GAF 45-48 Major Symptoms and Impairment

*AR* at 348-349. In Dr. Hughson's assessment of Mr. Tenorio, she opined that his impatience and poor frustration tolerance were typical of TBI survivors, which combined with his paranoia led to

5

a tendency to get into loud arguments. *AR* at 349. Thus, Dr. Hughson opined that "[a]lthough Mr. Tenorio scored 28/30 in the Mini Mental Status Exam screen, his deficits in higher executive function are such that he has never been able to manage his financial affairs. He would appear unemployable given the severity of his seizure disorder and the other problems mentioned." *AR* at 349. Nonetheless, Dr. Hughson opined that "[a]t present, he seems fairly stable within a supportive marital relationship, and is receiving appropriate medical care and appropriate medication for his seizures. His condition does not appear likely to improve." *AR* at 349. Finally, Dr. Hughson provided a Statement of Opinion of Abilities (Psychiatric Only) in which she opined that Mr. Tenorio would have the following mental limitations:

STATEMENT OF OPINION OF ABILITIES (Psychiatric Only)

| | Degree of Impairment | None | Mild | Moderate | Marked |
|---|---|---|---|---|---|
| 1 | **Understand & Remember** | | | | |
| | A. Detailed or complex instructions | | | X to | x |
| | B. Very short & simple instructions | | X to | x | |
| 2 | **Sustained Concentration & Task Persistence** | | | | |
| | A. Ability to carry out instructions | | | X to | x |
| | B. Ability to attend & concentrate | | X to | x | |
| | C. Ability to work w/o supervision | | | x | |
| 3 | **Social Interactions** | | | | |
| | A. Ability to interact with the public | | | X to | x |
| | B. Ability to interact with coworkers | | | x | |
| | C. Ability to interact with supervisors | | | x | |
| 4 | **Adaptation** | | | | |
| | A. Ability to adapt to changes in the workplace | | | x | |
| | B. Ability to be aware of normal hazards and react appropriately | | x | | |
| | C. Ability to use public transportation or travel to unfamiliar places | | | x | |

*AR* at 350.

6

The ALJ relied on Dr. Hughson's report when finding that Mr. Tenorio has severe mental impairments at Step Two of the sequential evaluation process. *See AR* at 31-32. He also cited her findings in support of his analysis at Step Three. *See AR* at 35 ("He is able to perform activities of daily living unassisted."), 36 ("On mental status examination, he was well informed and was able to attend, concentrate and provide an organized history. He was alert and oriented to date, person, place and situation[.]"). However, when it came to evaluating Mr. Tenorio's mental residual functional capacity, the ALJ gave

> little weight to [Dr. Hughson's] diagnoses and [GAF] score because they are not consistent with the other evidence discussed herein, and they were given at a consultative examination that was a one-time snapshot. In addition, they appeared to be based entirely on the claimant's subjective statements, which the undersigned finds to be inconsistent with his activities of daily living discussed above, which show that he has a greater mental capacity consistent with unskilled work as stated in the residual functional capacity discussed herein.

*AR* at 40. Thus, under Tenth Circuit law, the ALJ "effectively rejected" Dr. Hughson's diagnoses and opinions in favor of his own RFC findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (unpublished) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (unpublished) (same). The question is whether the ALJ's reasons for effectively rejecting Dr. Hughson's diagnoses and opinions withstand scrutiny.

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . he must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citations omitted). The same is true of "examining medical source opinions." *See Ringgold*, 644 F. App'x at 843 (citing *Chapo*, 682 F.3d at 1291; 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1)). Such an opinion "may be dismissed or discounted, of course, but that must be

based on an evaluation of all of the factors set out in the regulations and the ALJ must provide *specific*, *legitimate* reasons for rejecting it." *Id.* (emphasis added).

> When evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)). For the reasons that follow, the Court is not convinced the ALJ correctly applied the law or that his reasons for effectively rejecting Dr. Hughson's diagnoses and opinions are supported by substantial evidence.

First, the Court is not convinced that the ALJ's reasons were a proper application of the law. The Tenth Circuit has "repeatedly held that 'an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.'" *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007)). However, that is precisely what the ALJ appears to have done with Dr. Hughson's diagnoses and opinions here. As the ALJ recognized, there is scant objective evidence of Mr. Tenorio's mental functioning in the record. *AR* at 39-40 ("The objective evidence shows the claimant has not had any ongoing treatment with a mental health professional, and there is no evidence that he was hospitalized or was seen in the emergency room secondary to mental problems."). Thus, Dr. Hughson's opinions provide the *only* evidence before the ALJ concerning Mr. Tenorio's mental functioning, or at least the only evidence he mentioned other than the medical review by the state agency physician. *See AR* at 37-42. However, even the agency

8

physician determined that Dr. Hughson's opinion was entitled to "great weight as it is consistent with available evidence." *See AR* at 41 (citing Exhibit 2A), 102 (Exhibit 2A). Thus, the Court could remand simply because the ALJ violated the "pick and choose" rule.

However, even if this error is ignored, the Court finds that the ALJ's reasons for rejecting Dr. Hughson's diagnoses and opinions are either contrary to law or unsupported by substantial evidence. The ALJ's first reason, that Dr. Hughson's diagnoses and GAF score were inconsistent "with the other evidence discussed herein," *AR* at 40, is both. It is contrary to law because, as Mr. Tenorio argues, it is too vague. [*See* Doc. 15, p. 15 (quoting *Lewis v. Berryhill*, 680 F. App'x. 646, 647 (10th Cir. 2017) (unpublished))]. As the Tenth Circuit made clear in *Lewis*, an ALJ must provide specific reasons, supported by the record, if he intends to reject a doctor's opinions. *See Lewis*, 680 F. App'x at 647. This makes common sense especially where, as here, the ALJ accepts parts of an opinion. *Id.* ("This lack of specificity is confusing because Dr. Muckala found that Ms. Lewis was suffering from abdominal pain and the judge agreed. In light of this agreement on the existence of abdominal pain, we are left to speculate about the perceived inconsistencies between Dr. Muckala's assessment and the remainder of the medical record."). Here, however, the ALJ simply stated that Dr. Hughson's diagnoses and opinions were "not consistent with the other evidence discussed herein," *AR* at 40, leaving the Court to speculate what evidence was inconsistent with the diagnoses and opinions. *See Lewis*, 680 F. App'x at 647 ("The administrative law judge's second reason is too vague. The judge said that Dr. Muckala's opinion was inconsistent with the medical record. Which part of the record? The judge didn't say.").

The ALJ could have been referring to Mr. Tenorio's daily activities, as they feature heavily in his decision. *See AR* at 40 (finding Mr. Tenorio's subjective statements to Dr. Hughson to be "inconsistent with his activities of daily living discussed above[.]"). The Commissioner certainly

9

argues that this is the case. [*See* Doc. 17, p. 9 (citing *AR* at 37, 40)]. However, assuming that this is true, the ALJ's reasoning fails for lack of substantial evidence, as the ALJ relies upon Dr. Hughson's findings when determining that Mr. Tenorio "is able to perform activities of daily living unassisted." *AR* at 37 (citing *AR* at 347). Again, the ALJ appears to have cherry-picked this bit of supportive information from Dr. Hughson's report while rejecting her otherwise uncontradicted findings as to Mr. Tenorio's work-related limitations.

The ALJ's second reason, that Dr. Hughson's opinions were "given at a consultative examination that was a one-time snapshot[,]" fails as a matter of law. The Commissioner disagrees, arguing that the ALJ's rationale "was a common-sense observation that is substantially consistent with Dr. Houghson's (sic) prognosis about improvement with sobriety." *AR* at 10. However "common-sense" the ALJ's observation was, it is inconsistent with established case law, and for good reason. All consultative examinations are "one-time snapshots" of a claimant's functioning on a particular occasion. To disregard them as such is, therefore, a "facially dubious proposition." *Chapo*, 682 F.3d at 1291. "To the contrary, as the regulations governing medical opinions recognize, an examining medical-source opinion is, *as such*, given particular consideration: it is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Id.* "[O]therwise, the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Id.*; *see also Crowder*, 561 F. App'x at 743; *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (unpublished). This is especially true where, as here, the consultative examiner's findings "are not opposed by those of any other *medical* source, much less a treating source to whom they could be presumptively subordinated." *Chapo*, 682 F.3d ar 1291 (emphasis added). Rather, Dr. Hughson's

10

opinions are contradicted only by the ALJ's own RFC findings. Thus, the ALJ's second reason for rejecting Dr. Hughson's diagnoses and opinions fails as a matter of law.

The ALJ's final reason for effectively rejecting Dr. Hughson's diagnoses and opinions was that "they appeared to be based entirely on the claimant's subjective statements, which the undersigned finds to be inconsistent with his activities of daily living discussed above[.]" *AR* at 40. Mr. Tenorio argues, and this Court agrees, that this reason was contrary to caselaw. [*See* Doc. 15, p. 17]. For one thing, the Tenth Circuit has stated "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests[.]" *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). This makes sense, as the Administration's instructions to Dr. Hughson explicitly asked her to obtain Mr. Tenorio's complete psychosocial history. *AR* at 341. Thus, to a certain degree, Dr. Hughson's assessment of Mr. Tenorio necessarily relied upon his subjective complaints. However, Dr. Hughson did not solely rely on Mr. Tenorio's allegations. Rather, she reviewed his available medical records and conducted the requested testing, including a mental status examination. *See AR* at 341-350. The ALJ's conclusion to the contrary appears to be nothing more than speculation. However, "an ALJ may not make speculative inferences from medical reports and may reject a … physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002)).

The Commissioner argues that the ALJ's reasoning was sound because he found Mr. Tenorio's statements as to his symptoms incredible. [*See* Doc. 17, p. 8 (citing *Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015); *Paulsen v. Colvin*, 665 F. App'x 660, 664 (10th Cir. 2016))]. The Court is not convinced by these citations. For one thing, they are unpublished,

whereas both *Robinson* and *Langley* are published decisions. Moreover, the *Rivera* court affirmed where the ALJ compared two doctors' opinions and ultimately accorded less weight to one that was based on the Plaintiff's subjective complaints rather than the more objective information in the medical records. *Rivera*, 629 F. App'x at 845. The ALJ here made no such comparison, relying on his own speculative assessment of Mr. Tenorio's credibility to reject medical findings by a doctor. Likewise, in *Paulsen* the Tenth Circuit affirmed an ALJ's decision to give no weight to a treating physician's opinion where it "mention[ed] no supporting medical evidence and, apparently, was based on Ms. Paulsen's word[,]" which the ALJ found incredible. *Paulsen*, 665 F. App'x at 665. Here, on the other hand, Dr. Hughson's findings were based both on her examination (which lasted 60 minutes), her review of the record, *and* on Mr. Tenorio's subjective complaints. *See AR* at 349.

### V) CONCLUSION

In sum, the ALJ's reasoning for effectively rejecting Dr. Hughson's opinions are contrary to law, or are unsupported by substantial evidence. The ALJ's error in weighing Dr. Hughson's opinion renders the rest of his analysis unreliable. This is not to say that there are not jobs in the national economy that Mr. Tenorio can perform; however, without a proper RFC formulation by the ALJ, it is impossible to know if Mr. Tenorio is able to perform the two jobs identified by the ALJ here. *See Carr v. Comm'r, SSA*, 734 F. App'x 606, 611 (10th Cir. 2018) (unpublished) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.").

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Ray Tenorio's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, [Doc. 15] is GRANTED.

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent